UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff<br><br>v.<br><br>**REAL PROPERTY KNOWN AS<br>225 E. 74th STREET, APARTMENT 28B<br>NEW YORK, NEW YORK 10021**<br>Defendant | § § § § § § § § § | CIVIL CASE NO. C-18-CV-069 |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

Plaintiff, the United States of America, by and through its United States Attorney for the Southern District of Texas and the undersigned Assistant United States Attorney, represents:

### NATURE OF ACTION

1. This is a civil forfeiture action in rem brought under: (a) 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960, or any property traceable to such property; (b) 18 U.S.C. § 981(a)(1)(B)(iii) which provides for the forfeiture of any property, real or personal, within the jurisdiction of the United States, constituting, derived from, or traceable to, any proceeds obtained directly or indirectly from an offense against a foreign nation, or any property used to facilitate such an offense, if the offense would be punishable under the laws of the United States by imprisonment for a term exceeding 1 year, if the act or activity constituting the offense had occurred within the jurisdiction of the United States; and (c) 18 U.S.C. §981(a)(1)(C), which provides for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section

1344 of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355. This court has *in rem* jurisdiction over Defendant Real Property under 28 U.S.C. § 1355(b) and §1355(b)(2). Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district. Further, Title 18 U.S.C. §981(h) provides that "in addition to venue provided in section 1395 of title 28 or any other provision of law, in the case of property of a defendant charged with a violation that is the basis for forfeiture of property under this section, a proceeding for forfeiture under this section may be brought in the judicial district in which the defendant owning such property if found or in the judicial district in which the criminal prosecution is brought."

## DEFENDANT REAL PROPERTY

3.  The defendant is real property located at 255 EAST 74TH STREET, APARTMENT 28B, NEW YORK, NEW YORK 10021, with all appurtenances, improvements, and attachments thereon, legally described as:

> THE CONDOMINIUM UNIT ("UNIT") KNOWN AS UNIT NO. 28B IN THE BUILDING DESIGNATED BY THE STREET ADDRESS OF 255 EAST 74TH STREET ("BUILDING") IN THE 255 EAST 74TH STREET CONDOMINIUM ("CONDOMINIUM"), BOROUGH OF MANHATTAN, COUNTY OF NEW YORK, CITY AND STATE OF NEW YORK, SAID UNIT BEING DESIGNATED AND DESCRIBED BY THE ABOVE UNIT NO. IN A CERTAIN DECLARATION DATED SEPTEMBER 2, 2008, MADE BY GRANTOR PURSUANT TO ARTICLE 9-B OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK ("CONDOMINIUM ACT") ESTABLISHING A PLAN FOR CONDOMINIUM OWNERSHIP OF THE BUILDING AND THE LAND ("LAND") UPON WHICH THE BUILDING IS SITUATE (WHICH LAND IS MORE PARTICULARLY DESCRIBED IN EXHIBIT A ANNEXED HERETO AND BY THIS REFERENCE MADE A PART HEREOF), WHICH DECLARATION WAS RECORDED IN THE OFFICE OF THE REGISTER OF THE CITY OF NEW YORK, COUNTY OF NEW YORK ("REGISTER'S OFFICE") ON OCTOBER 17, 2008, UNDER CRFN 2008000409253, AND AMENDED BY CONFIRMATORY FIRST AMENDMENT TO DECLARATION DATED

NOVEMBER 4, 2008 AND RECORDED IN THE REGISTER'S OFFICE ON NOVEMBER 7, 2008, UNDER CRFN 2008000434311 ("DECLARATION"). THE UNIT IS ALSO DESIGNATED AS TAX LOT 1176 IN BLOCK 1429 OF SECTION 5 OF THE BOROUGH OF MANHATTAN ON THE TAX MAP OF THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK AND ON THE FLOOR PLANS OF THE BUILDING, CERTIFIED BY PETER CLAMAN, REGISTERED ARCHITECT ON SEPTEMBER 25,2008, AND FILED WITH THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK ON OCTOBER 6, 2008 AS CONDOMINIUM PLAN NO. 1960 AND ALSO FILED IN THE REGISTER'S OFFICE ON OCTOBER 17,2008, AS CONDOMINIUM MAP NO. CRFN 2008000409254;

TOGETHER WITH AN UNDIVIDED 1.2297% INTEREST IN THE COMMON ELEMENTS (AS SUCH TERM IS DEFINED IN THE DECLARATION);

EXHIBIT A TO UNIT DEED

DESCRIPTION OF THE LAND

LEGAL DESCRIPTION OF LOT 25

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN, COUNTY OF MANHATTAN, CITY AND STATE OF NEW YORK, SAID PARCEL MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS;

BEGINNING AT THE CORNER FORMED BY THE INTERSECTION OF THE NORTHERLY SIDE OF 74TH STREET WITH THE WESTERLY SIDE OF SECOND AVENUE;

RUNNING THENCE WESTERLY ALONG THE NORTHERLY SIDE OF EAST 74TH STREET, A DISTANCE OF 100 FEET;

THENCE NORTHERLY AT RIGHT ANGLES WITH EAST 74TH STREET, A DISTANCE OF 127 FEET 8 INCHES;

THENCE EASTERLY AT RIGHT ANGLES TO THE PRECEDING COURSE AND PART OF THE DISTANCE THROUGH A PARTY WALL, A DISTANCE OF 100 FEET TO A POINT ON THE WESTERLY SIDE OF SECOND AVENUE;

THENCE SOUTHERLY ALONG THE WESTERLY SIDE OF SECOND AVENUE, A DISTANCE OF 127 FEET 8 INCHES TO THE POINT OR PLACE OF BEGINNING.

EXCEPTING THEREFROM ALL THAT VOLUME OF SPACE DESIGNATED AS TAX LOT 121, WHICH LIES BELOW A HORIZONTAL LIMITING PLANE OF ELEVATION 68.17 FEET. SAID VOLUME OF SPACE BEING MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS;

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN, COUNTY OF MANHATTAN, CITY AND STATE OF NEW YORK. WHICH LIES BELOW AN UPPER LIMITING HORIZONTAL PLANE DRAWN AT ELEVATION 68.17 FEET (MANHATTAN HIGHWAY DATUM), SAID VOLUME IS BOUNDED, AND LIES WITHIN, THE VERTICAL PLANES FORMED BY THE BOUNDARIES WHICH ARE DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE WESTERLY SIDE OF SECOND AVENUE, DISTANT 27 FEET 8 INCHES NORTHERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE NORTHERLY SIDE OF 74TH STREET WITH THE WESTERLY SIDE OF SECOND AVENUE;

RUNNING THENCE WESTERLY ALONG A LINE WHICH IS AT RIGHT ANGLES WITH SECOND AVENUE, A DISTANCE OF 100 FEET;

THENCE NORTHERLY AT RIGHT ANGLES WITH THE PRECEDING COURSE, A DISTANCE OF 100 FEET;

THENCE EASTERLY AT RIGHT ANGLES WITH THE PRECEDING COURSE AND PART OF THE DISTANCE THROUGH A PARTY WALL, A DISTANCE OF 100 FEET TO A POINT ON THE WESTERLY SIDE OF SECOND AVENUE;

THENCE SOUTHERLY ALONG THE WESTERLY SIDE OF SECOND AVENUE, A DISTANCE OF 100 FEET TO THE POINT OR PLACE OF BEGINNING.

TOGETHER WITH THE BENEFITS AND SUBJECT TO THE BURDENS, UNDER EACH OF THE FOLLOWING:

1. THAT CERTAIN ZONING LOT DEVELOPMENT AGREEMENT DATED AS OF OCTOBER 12, 2005, BY AND BETWEEN 244 EAST 75TH STREET, LLC, LG 1431 SECOND AVENUE LLC, GMD REALTY LLC AND LMS REALTY LLC, AND RECORDED ON MARCH 31, 2006 IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK UNDER CRFN2006000181703;

2. THAT CERTAIN ZONING LOT AND DEVELOPMENT AGREEMENT DATED AS OF OCTOBER 12, 2005, BY AND BETWEEN LG 1431 SECOND AVENUE LLC, GMD REALTY LLC AND LMS REALTY LLC, AND RECORDED ON MARCH 31, 2006 IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK UNDER CRFN2006000181702;

3. THAT CERTAIN ZONING LOT AND DEVELOPMENT AGREEMENT DATED AS OF SEPTEMBER 21, 2006, BY AND BETWEEN LUCIA C. TUAN, AND EACH OF BUTTERMILK DIAMONDS LLC, DG SECOND AVENUE LLC, UPPER SECOND AVENUE LLC, GRACE EAST 74TH LLC, MG YORKVILLE LLC, EAST 74TH YORKVILLE LLC AND LG 1431 SECOND AVENUE LLC, AND RECORDED ON SEPTEMBER 29, 2006 IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK UNDER CRFN2006000548665; AND

4. THAT CERTAIN ZONING LOT AND DEVELOPMENT AGREEMENT DATED AS OF OCTOBER 11, 2006, BY AND BETWEEN TAYAB REAL ESTATE CO., LTD. AND EACH OF BUTTERMILK DIAMONDS LLC, DG SECOND AVENUE LLC, UPPER SECOND AVENUE LLC, GRACE EAST 74TH LLC, MG YORKVILLE LLC,

EAST 74TH YORKVILLE LLC AND LG 1431 SECOND AVENUE LLC, AND RECORDED ON OCTOBER 23, 2006 IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK UNDER CRFN2006000590677.

LEGAL DESCRIPTION OF LOT 121

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN, COUNTY OF MANHATTAN, CITY AND STATE OF NEW YORK, WHICH LIES BELOW AN UPPER LIMITING HORIZONTAL PLANE DRAWN AT ELEVATION 68.17 FEET (MANHATTAN HIGHWAY DATUM). SAID VOLUME IS BOUNDED, AND LIES WITHIN, THE VERTICAL PLANES FORMED BY THE BOUNDARIES WHICH ARE DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE WESTERLY SIDE OF SECOND AVENUE, DISTANT 27 FEET 8 INCHES NORTHERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE NORTHERLY SIDE OF 74TH STREET WITH THE WESTERLY SIDE OF SECOND AVENUE;

RUNNING THENCE WESTERLY ALONG A LINE WHICH IS AT RIGHT ANGLES WITH SECOND AVENUE, A DISTANCE OF 100 FEET;

THENCE NORTHERLY AT RIGHT ANGLES WITH THE PRECEDING COURSE, A DISTANCE OF 100 FEET;

THENCE EASTERLY AT RIGHT ANGLES WITH THE PRECEDING COURSE AND PART OF THE DISTANCE THROUGH A PARTY WALL, A DISTANCE OF 100 FEET TO A POINT ON THE EASTERLY SIDE OF SECOND AVENUE;

THENCE SOUTHERLY ALONG THE WESTERLY SIDE OF SECOND AVENUE, A DISTANCE OF 100 FEET TO
THE POINT OR PLACE OF BEGINNING.

The above legal description is incorporated herein by reference and hereafter referred to as the "Defendant Real Property."

    4.    The record owner of the Defendant Real Property is EAST 74TH STREET HOLDINGS LLC, a New York Limited Liability Company (hereinafter referred to as "EAST

74th STREET").

## FACTS

5. Jose Manuel SAIZ-Pineda ("SAIZ-Pineda") was the Secretary of Administration and Finance for Tabasco from January, 2007 through December, 2012. Prior to his appointment as the Secretary of Administration and Finance, SAIZ-Pineda was employed at various companies in the private sector where worked alongside co-conspirator Martin Alberto MEDINA-Sonda ("MEDINA-Sonda"). During his tenure in the private sector, SAIZ-Pineda provided consultation to various states and municipalities in Mexico, affording him the opportunity to experience government service and become acquainted with the eventual Governor of Tabasco, Andres Granier Melo ("Granier"). Granier entered office as the Governor of the state of Tabasco in January, 2007. SAIZ-Pineda assumed his government position as Secretary of Administration and Finance for the state of Tabasco at the same time and was appointed by Granier.

6. As the Secretary of Administration and Finance for the state of Tabasco, SAIZ-Pineda earned an annual salary of approximately $80,000 USD. The income for high-ranking state officials in Tabasco does not exceed $150,000 USD annual salary. For six years, at the highest pay grade of state government, the most income that SAIZ-Pineda could have legitimately earned would have been approximately $900,000 USD.

7. In late 2012, the federal prosecutor's office, Procuraduria General de la Republica ("PGR") of Mexico, and the Tabasco Attorney General's Office (Fiscalia General Del Estado "FGE") initiated an investigation regarding the state debt of Tabasco, which had risen to over one billion pesos (approximately $100 million USD) during the tenure of the Granier administration. According to the new administration, there are state funds that are unaccounted for that equal an equivalent of approximately $190 million USD.

6

9. SAIZ-Pineda, along with his co-conspirators, created offshore personal holding companies, trusts, and domestic shell companies to facilitate entry of proceeds into the United States financial system. SAIZ-Pineda, along with his co-conspirators, used the shell companies to establish investment accounts at various financial institutions in the United States. Funds from the United Mexican States, as well as Singapore, were then transferred into the investment accounts in an attempt to legitimize proceeds derived from the theft of state funds from Tabasco.

10. Information in this investigation has been received as a result of a Mutual Legal Assistance Treaty (MLAT) from the state of Tabasco, as well as from various financial institutions, title companies, and open sources. Analysis of the information led to the discovery of the Defendant Real Property.

11. SAIZ-Pineda ended his government tenure as the Secretary of Finance and Administration on December 31, 2012. On May 22, 2013, approximately 88,560,134 Mexican pesos (approximately $8 million USD) were seized by Mexican authorities from a residence associated with Marlis Cupil-Lopez, the former secretary of SAIZ-Pineda. This seizure led to the execution of a search warrant at the office of SAIZ-Pineda, located at Sanchez Magallanes #1113, Villahermosa, Tabasco, where authorities subsequently seized documentation corroborating the money laundering scheme.

12. On May 30, 2013, the U.S. visas of SAIZ-Pineda and Granier were revoked at the request of Mexican authorities due to flight risk regarding their ongoing investigation. On June 8, 2013, SAIZ-Pineda was stopped at the Pharr, Texas Port of Entry by the Department of Homeland Security. SAIZ-Pineda was denied entry into the United States and returned to Mexico, where he was arrested by Mexican authorities and charged with illegal enrichment.

13. On June 11, 2013, the U.S. visa of Silvia Beatriz PEREZ-Ceballos ("PEREZ-Ceballos"), the wife of SAIZ-Pineda, was revoked at the request of Mexican authorities, and

SAIZ-Pineda was publically implicated in the public corruption investigation being conducted by the state of Tabasco. On or about June 24, 2013, Granier was taken into custody on charges of money laundering and tax evasion.

14. In October 2014, MEDINA-Sonda was arrested in Quintana Roo, Mexico, on charges of kidnapping his three minor children. While incarcerated, in December, 2014, MEDINA-Sonda was additionally charged by Mexican authorities with money laundering stemming from a money seizure that occurred in November, 2007 and was convicted of the money laundering charges in April 2017 and sentenced to 12 years imprisonment. MEDINA-Sonda is also alleged to have plotted the murder of his former wife in March 2017. To date, both SAIZ-Pineda and Granier remain incarcerated in Tabasco while awaiting adjudication.

15. Defendant Real Property was purchased during and in furtherance of the money laundering scheme. The funds used to purchase the Defendant Real Property originated from Mexico and were transferred via shell companies created to facilitate the money laundering conspiracy and as an extension of the bank fraud committed against financial institutions. SAIZ-Pineda and MEDINA-Sonda purchased Defendant Real Property valued at approximately $5.8 million USC. SAIZ-Pineda and MEDINA-Sonda utilized a holding company created in Ireland to initiate the purchase. Eventually, another limited liability company was created in the state of New York to assume the ownership. The purchase was finalized by six wire transfers conducted from March, 2008 through February, 2009. The wire transfers were conducted as follows:

 (1) 03/26/2008 - $587,500 USC from Antonio ESPINOSA de los Monteros Leal
 (2) 09/23/2008 - $587,478 USC from PRODUCTORES POR EL CAMPO
 (3) 12/31/2008 - $500,000 USC from FEDERACION TABASQUENA
 (4) 12/31/2008 - $1,849,978 USC from PRODUCTOS POR EL CAMPO
 (5) 01/22/2009 - $1,300,000 USC from PERFORMANCE INVESTMENT LIMITED
 (6) 02/20/2009 - $1,304,978 USC from FEDERACION TABASQUENA

16.     In March of 2008, MEDINA-Sonda, acting as an authorized representative for PERFORMANCE INVESTMENTS LIMITED, entered into contract for the purchase of Defendant Real Property. The sale price of the residence was $5,875,000.00 USC.

17.     PERFORMANCE INVESTMENT LIMITED was established on November 28, 2006, in Dublin, Ireland, as a personal holding company (PHC) for the benefit of SAIZ-Pineda. On this same date, P.I. TRUST was created, listing SAIZ-Pineda as the owner of P.I. TRUST, and MEDINA-Sonda listed as the Original Protector. GLOBAL TRUSTEES (NZ) LIMITED was the trust administrator (or trustee), and granted the shares of PERFORMANCE INVESTMENT LIMTIED by SAIZ-Pineda. Thus, PERFORMANCE INVESTMENT LIMITED is beneficially owned by SAIZ-Pineda via P.I. TRUST, but administered by GLOBAL TRUSTEES (NZ) LIMITED.

18.     SAIZ-Pineda created the PERFORMANCE INVESTMENT LIMITED and P.I. TRUST approximately one month prior to assuming his government position, which he began on January 1, 2007. At the time MEDINA-Sonda entered into contract for the purchase of the Defendant Real Property, SAIZ-Pineda had been in his role as the Secretary of Administration and Finance for just over one year.

19.     On March 26, 2008, the initial deposit of $587,500.00 USC was wire transferred to the escrow account. The originator of the wire was Antonio ESPINOSA de los Monteros Leal, with an address in Tabasco, Mexico. ESPINOSA de los Monteros Leal, a.k.a. ESPINOSA DE LOS LEAL, has been implicated as engaging in money laundering schemes with the SAIZ-Pineda. Of particular interest was the government contract awarded to ESPINOSA de los Monteros Leal to provide the state of Tabasco with armored vehicles at inflated prices. Additionally, ESPINOSA has been under investigation for his role in a land deal following the Tabasco floods in late 2007. During February and March of 2008, ESPINOSA de los Monteros Leal, through his company

SUMINISTROS DEL CARMEN S.A de C.V., purchased approximately 169 hectares (417 acres) of land in a no-flood zone area for 110 million pesos (approximately $11 million USC). The following month in April of 2008, ESPINOSA de los Monteros Leal sold the land to the state of Tabasco government body Instituto de Vivienda de Tabasco (Invitab), for 246 million pesos (approximately $24 million USC), more than double his initial investment. SAIZ-Pineda relayed privileged information regarding the government's plans for the land acquisition to ESPINOSA de los Monteros Leal. The timing of this first escrow payment from ESPINOSA de los Monteros Leal coincides with the timing of the purchase and sale of the land in Mexico. There is further evidence that ESPINOSA de los Monteros Leal would issue bribes/kickbacks to SAIZ-Pineda and PEREZ-Ceballos while SAIZ-Pineda was in office.

20. On September 23, 2008, the second deposit into the escrow account for Defendant Real Property was received in the amount of $587,478.00 USC from PRODUCTORES POR EL CAMPO, from HSBC Mexico. PRODUCTORES POR EL CAMPO was the same company that originated an escrow deposit towards the purchase of a $5.5 million USC residence for SAIZ-Pineda located in Los Angeles, California. Those escrow deposits occurred on August 6, 2008, for $324,978.00 USC, just one month prior to the second deposit regarding Defendant Real Property.

21. On November 19, 2008, EAST 74TH STREET HOLDINGS LLC was formed in the state of New York. EAST 74TH STREET HOLDINGS LLC became the ultimate purchaser of Defendant Real Property. EAST 74TH STREET HOLDINGS LLC was comprised of an agreement between JEC HOLDINGS (NZ) LIMITED PARTNERSHIP, a New Zealand-based limited partnership, and JEC HOLDINGS LLC, a Delaware-based LLC. The agreement was signed twice by MEDINA-Sonda, who was listed as the Manager of JEC HOLDINGS LLC and

General Partner of JEC HOLDINGS (NZ). According to the document, the registered agent and members were to be contacted at an address in Miami, Florida.

22. On December 31, 2008, the third and fourth wires transfers were made to the escrow account for Defendant Real Property. One transfer was for the amount of $1,849,978.00 USC from PRODUCTORES POR EL CAMPO, the same company referenced previously in the second deposit, via HSBC Mexico. The other transfer was for the amount of $500,000.00 USC from FEDERACION TABASQUENA via Banco Mercantil del Norte. The originating wire information for the FEDERACION TABASQUENA transfer was listed as: FEDERACION TABASQUENA SC DE R, at an address in Villahermosa, Tabasco, Mexico.

23. According to incorporation documentation for FEDERCION TABASQUENA S.C. DE R.L. DE C.V., it is a company formed by several entities and headed by SAIZ-Pineda. It was established in Villahermosa, Tabasco, in December, 2003. The officers were listed as: President - Jose Manuel SAIZ-Pineda; Secretary - Martin Alberto MEDINA-Sonda; additionally, there is named an advisement board for the cooperation, with Marlis CUPIL Lopez occupying the post of Secretary. Marlis CUPIL-Lopez was the secretary of SAIZ-Pineda. On May 22, 2013, approximately 88 million, 560 thousand, 134 Mexican pesos (approximately $8 million USC) was seized by Mexican authorities from a residence in the Lomitas area of Tabasco, closely associated with SAIZ-Pineda and Marlis CUPIL-Lopez. The money seizure led to authorities raiding SAIZ-Pineda's office in Villahermosa, Tabasco, where paperwork detailing the U.S. money laundering scheme was seized.

24. On January 22, 2009, the fifth deposit was transferred to the escrow account for the amount of $1,300,000.00 USC from PERFORMANCE INVESTMENT LIMITED, via Morgan Stanley Smith Barney (MSSB). The originating wire information is listed as: PERFORMANCE INVESTMENT LIMITED, 7th Floor, Humme House, Ballsbridge, Ireland. The

PERFORMANCE INVESTMENT LIMITED account at MSSB was opened by MEDINA-Sonda on March 28, 2007. The beneficial owner of the account was listed as Martin Alberto MEDINA, who stated at account opening that he was a partner at PATRIMONIUM CONSULTORES, a tax advisory firm in Mexico, and his wealth was derived from his income there. MEDINA-Sonda responded in the negative regarding whether or not he has been or was currently a Politically Exposed Person (PEP) or a close associate of a PEP. At this time, SAIZ-Pineda had already assumed office as the Secretary of Administration and Finance for the State of Tabasco. Furthermore, the account was held for the company created by SAIZ-Pineda, for which MEDINA-Sonda was the "Original Protector" of the trust that held shares of the company.

25. The MSSB account held by PERFORMANCE INVESTMENT LIMITED was funded by incoming wire transfers from FEDERACION DE COOPERATIVA and FEDERACION TABASQUENA, located in Villahermosa, Tabasco, through the Bank of New York. As discussed, according to incorporation documentation for FEDERCION TABASQUENA S.C. DE R.L. DE C.V., FEDERACION TABASQUENA also known as FEDERACION DE SOCIEDADES COOPERATIVAS, is a company formed by several entities and headed by SAIZ-Pineda. This is the same Mexican company responsible for the fourth and sixth escrow deposits towards to purchase of Defendant Real Property.

26. On February 20, 2009, the sixth and final wire transfer to the escrow account was received for the amount of $1,304,978.00 USC from FEDERACION TABASQUENA, through HSBC Mexico. The originating wire instructions were listed as: FEDERACION TABASQUENA SC DE RL DE CV, Sanchez Magallanes 1105, Piso 1, Mod 1. The Sanchez Magallanes 1105 address was utilized by MEDINA-Sonda in September, 2012, when he had established the HEREDITAS CONSULTING FIRM LLC in the State of Texas. This business was later used in conjunction with the purchase of another real property in Texas. The company of 6

LANGSTONE PLACE INC was later created in Texas to purchase the residence in The Woodlands, Texas, for the benefit of MEDINA-Sonda.

27. The final closing regarding Defendant Real Property was conducted on February 26, 2009, in New York. Prior to closing, MEDINA-Sonda changed the ultimate purchaser to EAST 74TH STREET HOLDINGS LLC, which as previously mentioned was created in New York in November of 2008. The name of EAST 74TH STREET HOLDINGS LLC was later changed to SAMURAI INVESTMENT LLC in September of 2010. SAIZ-Pineda and MEDINA-Sonda created layer upon layer in an effort to mask the true ownership of the residence, just as they also did with the purchase of Defendant Real Property. In September, 2009, MEDINA-Sonda also purchased a storage unit to accompany the condo, valued at $40,000.00 USC.

28. As noted above, the purchase of the Defendant Real Property was initiated in March, 2008, but was not finalized until February, 2009. During that time period, SAIZ-Pineda was also engaged in the purchase of a residence located in Miami, Florida. That purchase was initiated in June of 2007 and finalized in April of 2009, just two months after the final closing of the Defendant Real Property.

29. It is significant to note that the aforementioned real property purchases were finalized as cash transactions. This investigation has revealed the purchase of seven real properties, all conducted as cash transactions, totaling approximately $30 million USC, while SAIZ-Pineda held public office. During his government tenure, SAIZ-Pineda was required to file annual wealth and asset declarations for the state of Tabasco, which includes the requirement to declare assets owned internationally. In those annual filings, SAIZ-Pineda did not disclose the ownership of any of the aforementioned properties, to include the Defendant Real Property.

30. On April 26, 2017, a federal grand jury in the Southern District of Texas, Corpus Christi, Texas, returned a true bill indictment for SAIZ-Pineda, Silvia PEREZ-Ceballos (the wife

of SAIZ-Pineda), and MEDINA-Sonda. They were charged in a two-count indictment with a money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h) and a bank fraud conspiracy, in violation of Title 18, United States Code, Sections 1344 and 1349. In addition to the criminal indictment, criminal forfeiture included seven real properties, to include the Defendant Real Property, six financial accounts, and a personal money judgment for $50 million USD. In October of 2017, PEREZ-Ceballos was convicted of a bank fraud conspiracy after a federal jury trial. SAIZ-Pineda and MEDINA-SONDA remain in custody in Mexico.

31. In May of 2017, federal law enforcement agents executed a federal search warrant of Defendant Real Property. Inside, agents located several evidentiary items indicating ownership by SAIZ-Pineda and PEREZ-Ceballos.

32. During the jury trial of PEREZ-Ceballos, multiple witnesses testified that Defendant Real Property belongs to SAIZ-Pineda.

33. Also during the jury trial of PEREZ-Ceballos, LATOUR identified his role as the "wallet" in the money laundering scheme of SAIZ-Pineda. LATOUR explained that he was responsible for paying expenses through the use of shell companies so that the names of SAIZ-Pineda and PEREZ-Ceballos would not appear on documentation. LATOUR testified that he acted as the "wallet" for multiple real property transactions, including Defendant Real Property, and numerous other expenses on behalf of SAIZ-Pineda and PEREZ-Ceballos. These transactions occurred during the government tenure of SAIZ-Pineda and continued even after the arrest of SAIZ-Pineda by Mexican authorities. LATOUR testified that after the arrest of SAIZ-Pineda, LATOUR continued to hide assets for SAIZ-Pineda, including millions of dollars in personal assets and real properties. LATOUR also sent multiple bulk cash deliveries to Houston, Texas, for the benefit of PEREZ-Ceballos after the arrest of SAIZ-Pineda.

34. To date, Defendant Real Property continues to be held in the name of EAST 74th STREET HOLDINGS LLC.

## NOTICE TO ANY POTENTIAL CLAIMANTS

YOU ARE HEREBY NOTIFIED that if you assert an interest in the Defendant Real Property which is subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The verified claims must be filed no later than thirty-five (35) days from the date this Complaint has been sent in accordance with Rule G(4)(b).

An answer or motion under Rule 12 of the Federal Rules of Civil Procedure must be filed no later than twenty-one (21) days after filing the claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this Complaint.

## PRAYER

WHEREFORE, the United States of America prays that judgment of forfeiture be entered against the Defendant Real Property in favor of the United States of America and for such costs and other relief to which the United States of America may be entitled.

          Respectfully submitted,

          RYAN K. PATRICK
          United States Attorney

By:   s/ Julie K. Hampton
       JULIE K. HAMPTON
       Assistant United States Attorney
       State Bar No. 24032269
       Federal Bar No. 431286
       800 N. Shoreline Blvd., Suite 500
       One Shoreline Plaza
       Corpus Christi, Texas 78401
       (361) 888-3111

## VERIFICATION

I, Patricia Trevino, a special agent with Drug Enforcement Administration, hereby affirm and verify that the facts set forth in the foregoing Complaint for Forfeiture in Rem are true and correct to the best of my knowledge and belief.

_____
Patricia Trevino
Special Agent, DEA

Sworn and subscribed before me, the undersigned authority, on this 7th day of March, 2018.

_____
Notary Public in and for the State of Texas

My commission expires:

9-25-2020



## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Verified Complaint for Forfeiture In Rem was mailed via certified mail, return receipt requested to:

1. JOSE MANUEL SAIZ-PINEDA, via Mutual Legal Assistance Treaty request, through the Department of Justice-Office of International Affairs. Also sending notice to attorney Andres Sanchez, attorney for Jose Manuel SAIZ-Pineda, Parker & Sanchez, PLLC, 712 Main Street, Suite 1600, Houston, Texas 77002.
2. MARTIN ALBERTO MEDINA-SONDA, via Mutual Legal Assistance Treaty request, through the Department of Justice-Office of International Affairs.
3. SILVIA BEATRIZ PEREZ-CABALLOS, through attorney F. Andino Reynal, The Esperson Building, 808 Travis, Suite 1553, Houston, Texas 77002.
4. Celso Perez-Ceballos, 2706 Lytham, Sugarland, Texas 77479.
5. Jose Latour, though attorney Mark Shapiro, 1 SE 3rd Avenue #28, Miami, FL 33131.
6. EAST 74TH STREET HOLDINGS LLC, c/o Jose Latour, though attorney Mark Shapiro, 1 SE 3rd Avenue #28, Miami, FL 33131.
7. SAMURAI INVESTMENT LLC, c/o Jose Latour, though attorney Mark Shapiro, 1 SE 3rd Avenue #28, Miami, FL 33131.
8. Fernando Saiz-Pineda, through attorney Charles Medlin, 2211 Norfolk St., Ste. 735, Houston, Texas 77098.

on this the 7th day of March, 2018.

                                            s/ Julie K. Hampton
                                            JULIE K. HAMPTON
                                            Assistant United States Attorney